1792, c. 103, § 36, p. 191, and that no parol evidence is sufficient to prove emancipation in any other manner. Rob. Wills, 26.

But THE COURT (mem. con.) made the following order: "Upon consideration whereof," (that is, of the special verdict,) "THE court is of the opinion that the petitioner will be entitled to his freedom on the 26th of December, which will be in the year 1844, and not before; and therefore that the judgment at law, upon the said special verdict, must be for the defendant. But, inasmuch as the said petitioner has filed his bill in equity, stating his fears that the said defendant, Richard B. Alexander, will remove the petitioner from the District of Columbia, under the laws whereof his claim for freedom has accrued, and from the jurisdiction of this court, before the said 26th day of December, 1844, whereby he may be deprived of the means of establishing his right to freedom when it shall have become absolute: It is this 18th day of February, 1840, ordered that the said defendant Richard B. Alexander, shall not be permitted to take the said petitioner into his possession, (the said petitioner being now in the custody of the marshal for safe keeping, and for the protection of the rights of the said petitioner,) until he, the said Richard B. Alexander, shall have given bond to the United States with good security in the penalty of $1,000, with condition to be void, if he shall have the said petitioner forthcoming, and produce him to this court, or to the marshal of this district on the aforesaid 26th day of December, 1844; the said bond and security to be approved by this court, or one of the judges thereof: provided, however, that the said petitioner, Moses Graham, shall have first given security to the said Richard B. Alexander by bond with good security, to be approved by this court, or one of the judges thereof, in the penalty of $800, conditioned that he, the said Moses, shall continue faithfully in the service of the said Richard B. Alexander, in the District of Columbia, until the said 26th of December, 1844. And upon the said bonds being given and approved as aforesaid, and filed in this court, or in the clerk's office, the said petitioner shall be delivered up to the said Richard B. Alexander, upon demand."

GRAHAM (BENJAMIN v.). See Case No. 1,301.

## Case No. 5,663.

### GRAHAM v. COLLECTOR.

[Cited in Kennedy v. Hartranft, 9 Fed. 19, 25, note. Nowhere reported; opinion not now accessible.]

## Case No. 5,664.

### GRAHAM v. DOMINGUEZ.

[1 Am. Law T. Rep. U. S. Cts. 70.]

District Court, S. D. New York. May, 1868.

ARREST—FALSE REPRESENTATIONS—AGENT—BAIL.

The principle that governs a preliminary investigation as to bail, is, that if a reasonable cause of action is shown the defendant is held to bail.

At law.

Cram & Seward, for plaintiff.

Doolittle, Davis & Wyman, for defendant.

BLATCHFORD, District Judge. The written documents and affidavits in this case seem to me to put the propriety of the arrest and holding to bail of the defendant beyond any question. Exhibit No. 4, on the part of the plaintiff, is a contract signed by the plaintiff and Antonio Millan, and witnessed by the defendant, dated October 3, 1867, but shown to have been executed October 10, 1867, whereby Millan agrees to pay, or satisfactorily secure to be paid, to the plaintiff, within seventy-five days from October 3, 1867, the sum of 1,800,000 silver dollars, or soles de plata, or equivalent, and the plaintiff agrees to deliver at any place Millan may name, between certain parallels of latitude and longitude, as soon as practicable, the monitor Agamenticus, over 1,500 tons, with two turrets and four guns, fully armed and equipped in every respect for an engagement of four hours, in conformity to the regulations of the navy of the United States. Millan agrees to purchase the monitor at said price and upon said conditions, and also agrees to pay to the plaintiff a further sum of $40,000 in gold, or its equivalent, when the monitor is delivered. The contract further states that Millan has deposited with the plaintiff "the sum of $500,000 in bonds issued by Peru and Chili as collateral security for the faithful performance of his part of this contract, which collateral security shall be returned to him when his part of it has been fulfilled." The contract also states that "for the true and faithful performance of all and every of the covenants and agreements herein mentioned, the parties to these presents bind themselves each unto the other in the penal sum of $500,000, as fixed and settled damages to be paid by the failing party."

Simultaneously with the execution of the contract, Exhibit No. 4, that is, on the 10th of October, 1867, another paper was signed by Millan and delivered to the plaintiff, also dated October 3, 1867, which paper is Exhibit No. 7, on the part of the plaintiff. That paper is as follows: "It is hereby understood and agreed between John Graham and Antonio Millan, that in case of the nonfulfillment of a contract made and entered into this day, Millan will only receive $400,000 of bonds of Chili and Peru out of the deposit made this day of $500,000 by Millan; but if Millan's contract is carried out, Graham will return in the stipulated time the aforesaid bonds, amounting to $500,000." This expression, "return in the stipulated time," is explained by three other papers. One is Exhibit D, on the part of the defendant, dated October 3, 1867, and signed by the plaintiff. It reads thus: "Received from Go. Dominguez, by order of Dn. Antonio Millan, $270,000 in Chili and Peru bonds, in the following numbers, viz." Another is a